7, Ester Mercado v. Government of Puerto Rico, et al. Good morning, Your Honor. Thank you. May I have your support? Yes, please. I am Juan Saavedra Castro. I'm here on behalf of Appellant Ester Mercado. I would like to reserve two minutes for rebuttal. That's fine. Thank you. The 2008 amendments to the Americans with Disabilities Act made possible Ester Mercado's complaint. There are four legs to my argument. Soton v. United Airlines held that it regarded as cases brought under the ADA a plaintiff had to allege a major medical, major life activity that had been affected or limited as a result of the perceived disability. Congress overturned Soton and held that regarded as plaintiffs no longer have to allege such claim. All courts of every court, including this court, that have evaluated the 2008 amendments have held that it would not have retroactive effect. Had my client brought her claim as displayed in the complaint prior to the 2008 amendments, her complaint would have been dismissed because she did not plead and cannot plead, in fact, that the perceived or regarded as mental incapacity affects a major life activity. The impairment in her case, as found by the Superior Court, was that she was capable of acts of aggressiveness, impulsiveness, and anxiety. I cannot for the life of me come up with a major life activity that could be affected by this perceived mental impairment. Can I just ask you about your complaint, one part of it that seems, that was a little puzzled by giving this argument. Paragraph 7.2 of the complaint, this is your complaint. As a result of defendant's actions and omissions, plaintiff has a record of an impairment that would substantially limit her capacity to interact with others. Plaintiff, therefore, has a history of or has been misclassified as having a mental or physical impairment that substantially limits one or more major life activities. Yes, Your Honor, that comes in the account for the injunctive relief. What happened was one of the damages that she suffered as a result of the violation of the ADA by defendant is that now she's tagged as a psychiatric, unjustifiably, as a psychiatric patient. One of the claims in the damages and reason for the way we get requesting injunctive relief, and that only limits itself to injunctive relief, has to do precisely with the kind of damage that are caused. You're branded forever. I see. So when you say has a history of, you don't mean she actually has the impairment. She means they're treating her in this way. After the events. I got it. That's what exactly. I'm sorry. I apologize for the misunderstanding. Under no circumstances, Your Honor, did we allege, and as I said, nor can we allege that there's a major life activity involved. The reason my four legs of the argument, Your Honor, really are taken explicitly almost from the Jones case, Jones v. Donnelly, where the Supreme Court had to evaluate whether an amendment to an existing law could be the basis for triggering the four-year statute of limitations in Section 1689. That's exactly the reason they did. They looked at whether or not there was a case for the Supreme Court that had been superseded or overturned by Congress. They looked at their own history about how they had dealt with the amendments and concluded that the Supreme Court had looked at the case of the new law and decided it could not be applied retroactively. It looked at whether or not the plaintiff in Jones could have plated a case effectively under the law as it was before the law was amended, concluded that she could not or he could not, and therefore easily concluded that the case was controlled by 1689. And that's exactly what we're asking. Counsel, I'm looking at Justice Stevens's language in the Jones case. Yes. And this is part of what he says, I think, rather dispositively on the point we're talking about. Interpreting Section 1658 to apply whenever a post-1990 enactment creates a new right to maintain an action also is consistent with common usage of the word arise to mean come into being, originate. I mean, the amendments that we're talking about were responsive to some interpretations of language defining a disability, which Congress felt was too restrictive. And so it responded to those very restrictive interpretations. But those amendments did not create a new right. I mean, the right had already existed. I don't understand how you get from those clarifying amendments to the proposition that those amendments created a new right, which you are now invoking and pursuing. And, in fact, the definitions of disability, which underlie the cause of action here, did not change at all. The language of the definition of a qualified individual with a disability was dramatically changed with regards to regarded as plaintiffs. Before, both in the definition of certain and the plain language of the statute, which the majority at least in Sutton relied, required the plaintiff in a regarded as context to allege and prove, and this court in two very important cases followed Sutton, to allege and prove an impediment or limitation on major life activity. Changing the definition of who is a qualified individual who can bring a complaint is the most basic elemental change you can make to a statute. In fact, every journal that has looked at the issue regarded as plaintiffs has concluded that the number of plaintiffs and persons withstanding to bring this kind of suit has been expanded. My client falls with inside that group of people who now have a claim that did not exist prior to the 2008 amendments. I would have, if this case had been brought before the amendments, we would be arguing about whether or not a major life activity could be affected by acts of aggressiveness, impulsiveness, and anxiety, Your Honor. Congress eliminated that requirement. I don't have to prove that. That's why I can bring this claim. So we were in a regarded as before the amendment and after the amendment. The change was only as to a regarded as claim. Specifically eliminating that. Okay. So before the change, you would not have had to show that your client had an impairment that created a major life activity. You would have only had to show that she was regarded as having an impairment that affected a major life activity, correct? Before the 2008 amendment, in order to bring a regarded as claim, I had to plead and prove that the perceived limitation had a major life activity. Okay. And what you were relieved of having to show in consequence of the amendment was showing that the perception was of an impairment of that degree. Absolutely, yes. After the amendment, what Congress did on your view is say that as long as they regard you as having an impairment, even if it's not a major one, that's enough, right? No, sir. There are two changes, two additional changes to regarded as plaintiff. Regarded as plaintiff must not be a transient impairment, and it may not be a minor impairment. We submit that this is a major impairment, but it did not affect a major, it did not have a limitation on a major life activity. And before that, you would have had to show that the defendant regarded her as having an impairment of that high quality. That's correct, Your Honor. That's what Sultan said, that what this court said in at least two cases. And I just, the reason that Congress made that change was because they wanted to make it clear that misperceptions about disability were equally bad, whether they were based on a. On myth and legends, and my client was a victim of a myth and legend that persons with mental incapacities are violent, and that's just a myth. Do we care that Congress in the legislative history described what it was doing as reinstating a previous rule? Well, I think. And if we don't care, why don't we care? No, we do, because in fact, what Congress said, and the particular language you're referring to was the one that really tried to get rid of myths, of legends, of stereotypes. My client was a victim of stereotypes. What I'm asking you is in the legislative history, Congress in doing that in the amendment to the regarded as, described what it was doing as reinstating the rule. That's correct, Your Honor. Well, reinstating suggests it was already there. No, Your Honor, because it restated from Section 504 of the Rehabilitation Act. It was a different, it was not, it was referring to the R-line case that the Supreme Court had misread, had read differently in Sultan. So it was really overturning Sultan, which laid out an interpretation of the law. So that's no different than Patterson and the context. The four legs I described come from the last paragraph in Jones, Your Honor. Good morning, may it please the Court. This is Rosa Perez on behalf of the government, the Office of the Court's Administration and the Supreme Court. Justice Stevens in the Jones case basically sets the rule that applies into the And he first starts by saying that this section is not restricted to new congressional enactments. There are instances where amendments of a pre-existing statute trigger the application, of course, and that's the case of Jones. But he also makes clear here that the operative question to determine whether the section applies to a post-1990 congressional amendment, which is the case of the 2000 Act of Congress, is what matters is the substantive effect of the enactment and the creation of new rights and corresponding liabilities. So in this case we contend that these amendments do not create new rights of action And the regarding us claim was certainly available by the time Congress acted. Not of the type, if I understand plaintiff's argument, not of the type that plaintiff is now contending. Before you had to show that they regarded you as having an impairment that would affect a major life activity. After the amendment, you only need to show that they regarded you as having a non-transient major impairment. That's a difference. There is a difference, but that is geared towards an analysis that what we have is a substantive change, of course, in what makes the claim. But the original regarding us claim was existing. If I have a statute that says you're liable for discrimination and it only protects disparate treatment, and then I change it and I say discrimination now also means disparate impact, and I bring a disparate impact claim, that's a new claim, right? Well, Your Honor, but this is... No, I'm just asking, wouldn't that be new? They're both interpretations of a discrimination claim. You had a discrimination claim at time one. At time two, you have a broader discrimination claim now for disparate impact. Why is that any different than what plaintiff is saying? At time one, I had a regarded as claim, but it was for regarded as having a certain kind of impairment. At time two, I have a broader regarded as claim because it now encompasses a broader class of impairment. Right. Well, certain claimants would have a case after, whereas others don't, and that's pretty much the whole jurisprudence that Appellate cites in his brief is about that change, is about having people, you know, the Congress broadening the scope of... But that's what they did here, isn't it? It is what they did. But when Justice Stevens in Jones' opinion says we cannot engage in guesswork because what the imperative question is, the claim existed, yes. This is a case where regarded as claims existed. Of course, there are substantive changes that broaden the scope. This is what Congress originally intended, and that's why when we see the text, the original text of the 2008 amendments... He is telling us that prior to these amendments, he would have had to make allegations in order to meet the regarded as standard, that he could not have made it, that he could not in good faith have made those allegations. Now with the amendments, he no longer has to make those allegations in order to bring a regarded as claim that survives. He's now able to use the language of Justice Stevens' decision. He now has a new right to maintain that action because he no longer has to make allegations that he could not have made prior to the amendments. So why doesn't that scenario meet the language of Justice Stevens' decision in Jones? Well, we would submit that engaging in that kind of analysis, it's pretty much pushing the courts to engage in a comparison of claims and allegations that make up before and after 2008, and this is not really the intention of Congress. Congress had an original intention. Courts misconstrued it along a few years and then Congress acted again to reinstate their original intent. So considering that, we would request this court to confirm the district court. Thank you. Good morning, if you would please support. I'm Michael McCaul. I represent ASMA in this appeal. It's our intention that if you look at the original language of the ADA as adopted in July of 1990, that regarded as claims, the original language of the ADA and the intent behind the Congress that adopted it was that regarded as claims were part of the statute from its inception. The language that became the regarded as claims that were in prong three of the definition of disability adopted with the original ADA was taken from the Rehabilitation Act Section 504. It was specifically taken from the amendments to the Rehabilitation Act adopted in 1974, the year after the statute, and the law review article that we cited within the brief, particularly the Boston College Cites from the House Report the year before when the ADA was going, what became the ADA. So the regarding as claims were there. It was a cause of action from the beginning. Do you mean Sutton was wrong? What I understand Sutton did is that Sutton took, went beyond the language and the cause of action that was in the ADA from its inception. Sutton got it wrong. Is that the idea? That's what I understand. If Congress has the, if I could. Well, I'm just trying to get the argument. So for determining whether or not it's a new claim, we're supposed to decide whether in Congress's view when they amended the statute, they were making an amendment that they thought was unnecessary, but that was occasioned only because the Supreme Court erred? Well, I think what you need to focus on in Jones is a language, new cause of action. What is different from our case, from what was involved in Jones, in Jones the circuit court was saying that you had to have a completely new statute, that if you didn't have that, then it wasn't a new, that's clearly not what we have here. What we have here is essentially an identical language of the regarded as. Let me just ask it this way. If they hadn't made this amendment, could this claim have been brought post-Sutton? I think what Congress understood. Just, I'm not asking that question. Okay. After Sutton, if they had not made the amendment, could this particular claim as pled have been brought? I would agree with you that Sutton had the language regarding the substantial impairment that Congress understood when adopting the amendments in 2008, that that was inconsistent with their original intent and the language. And it's that gloss on the language that they said was improper. It's the gloss that came from the binding authority that determines the meaning of the statute, which is the Supreme Court of the United States. So it's kind of an. Right. What's different from a constitutional setting, in a statutory interpretation, Congress has a right to clarify what its intent was at the time it adopted the statute. What I understand they did in the ADA amendments in 2008 is that the regarding as claim, from its beginning, and the reference to Eileen from the Section 504 Rehabilitation Act, that was what Congress understood the claim to be at its inception. That Sutton did an interpretation beyond the actual language of it, that was inconsistent with Congress' interpretation from the inception, and that they specified in the 2008 amendments that that was not their original intent. And they corrected that. But it was Congressional, the Congress' intent from 1990 when it was adopted, that the regarding as claims didn't have that requirement. It wasn't explicit from the language, and the actual language, if you compare the language from 1990 and the 2008. Counsel, may I just add. Yes. I'm looking at the district court's decision in footnote two. And it makes, it's in a footnote, but it's really, I think, perhaps a critical point in the decision. It quotes the language as enacted in 1990, the ADA definitions of disability. It points out that those 2008 amendments did not affect, did not change those definitions at all. And so concludes that because those elements are identical, the cause of action being invoked here already existed. The 2008 amendments did not change that. Yes. Is that basically, your position reflects. That's my position. I think that the district court got it right. And if you compare the language, the definition of disability, that is in the third prong of the original, it was section C, being regarded as having such an impairment. It's identical to the language after the ADA amendments, that prong. So the cause of action was there from the inception. Congress understood that there was a misinterpretation of something put in there by the Supreme Court in Sutton that was not their intent and did not have to be. They corrected that. So it regarded as claim was available prior to the amendments. And it's your position that that fact really exhausts the analysis as to whether the 2008 amendments can be invoked? Is that, again, is that your position? It's our position that it is not a new cause of action under Donnelly and that there is no court has adopted that. The language of the statute in 2008 doesn't say that they were concerned with the statute of limitations. Nothing in the legislative history showed that Congress was intending to change this body of case law when it adopted the 2008 amendments. What Congress did, as it has the right to do in federal statutory context, unlike constitutional, is to correct what its original intent of the language was. It has the same definition of regarded as disability, and it corrected what they understood to be a misinterpretation that was not implicit in that definition and was not how they intended that cause of action from its beginning. Can I just get the limits of the logic, then, just to go back to my hypothetical? Okay. There's a discrimination, race discrimination statute. It just prohibits discrimination. Courts interpret it to say you can only bring a disparate treatment claim, not a disparate impact claim. Congress, after the Supreme Court says disparate treatment is okay, disparate impact is not okay, passes a statute saying discrimination also includes disparate impact. Would your view be that all disparate impact claims, then, are just the same cause of action? I think I would agree with you if the language of the new statute is a significant difference that is different from the language at its inception and then changes it and creates, and I view a disparate impact. The statute says no discrimination. Afterwards, they say, I mean, it just says no discrimination, and afterwards they make clear that it includes disparate impact, and in doing so they have a conference report that says this reinstates our original understanding, which the Supreme Court misunderstood, which is that all along from the beginning disparate impact claims were permissible. What I understand is that it's different from, if you're referring to like the Patterson case, that Jones relied upon. No, I'm just giving my hypothetical. Okay. Well, what I understand to be is that in that circumstance, if the language after the new congressional act, a new act of Congress post the 1658 passage in December of 1990, adopts new statutory language. Is there no new language here at all? There is a sub- So we're supposed to, I'm just trying to figure out what the test is. It's got to be a lot of language that's changed? How are we supposed to do this inquiry? Well, I think that the regarded as language in prong three- I know that didn't change, but some language changed, so why doesn't the language that did change matter? Because the language that changed did not go towards what was the original intent at that juncture in regarded as claims is my understanding, the reading of it. And we're different from Patterson because Patterson was clearly at the time of enactment of contracts. And the language adopted in Patterson made clear that there were new causes of action after the new language was adopted in the areas of termination and in the areas of wrongful discharge and refusal to transfer. But that stemmed from the new language explicitly that was not part of the from its inception. Okay, thank you. Moments like this I remember Professor Arthur Miller's words, keep reading. So if you read below where that definition appears at footnote two of the opinion, below Congress added the following language. For purposes of paragraph 1C, the regarded as, an individual meets the requirement of being regarded as having such impairment. If the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment, whether or not the impairment limits or is perceived to limit a major life activity. So yes, Congress kept the language but changed the definition. And changed the definition, as you pointed out, and according to the Congressional record shows, to reinstate the reasoning, and I'm quoting from the Congressional record, ADA section 2B3. It says, to reinstate the reasoning of the Supreme Court in Arlene, which set forth a broad view of the third amended version of the third prong of the definition of handicap under the Rehabilitation Act, which had been the model for the ADA. So the ADA amendments of 2008 made possible my client's claim because prior to 2008, I could not have brought in good faith a cause of action because I could not have pled, nor did I plead, for a major life activity. You would never now need to, there would be no reason ever to plead what once was required to be pled. Yes, that's correct. Okay. And I would have been thrown out of the court had I done that under the old statute before. No, no, no, no, but I'm saying now, going forward, that old claim wasn't just a new aspect of it was provided. The new aspect that's provided makes it completely unnecessary ever to plead what you used to have to plead. Yes, and my client can survive the claim. Thank you.